IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LANGEMAN MANUFACTURING, LTD.,

                Plaintiff,

       v.

RHINO LININGS USA, INC., ZIEBART
INTERNATIONAL CORP., BALLWEG
CHEVROLET, INC. and KING KOLLISION,
L.L.C.,

              Defendants.

OPINION and ORDER

07-cv-411-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      In this civil case for patent infringement, plaintiff Langeman Manufacturing, Ltd. contends that defendants Rhino Linings USA, Inc., Ballweg Chevrolet, Inc., King Kollision, L.L.C. and Ziebart International Corp. infringe three patents that it owns, U.S. Patent No. 6,284,319 (the '319 patent), U.S. Patent No. 6,875,469 (the '469 patent) and U.S. Patent No. 7,014,900 (the '900 patent).  All three patents relate to edge trimming tape.

      Now before the court are the parties' cross-motions for summary judgment.  Plaintiff has moved for summary judgment on the ground that defendants infringe all three patents as a matter of law.  Defendants Rhino Linings, Inc. Ballweg Chevrolet, Inc. and King Kollision filed a joint motion for partial summary judgment, in which they contend that they

do not infringe the '469 and '900 patents.  Defendant Ziebart International Corp. filed a motion for partial summary judgment regarding non-infringement of the '469 and '900 patents as well.  Plaintiff and defendant Ziebart have advised the court that they are engaged in settlement discussions.  Therefore, I will consider the parties' cross-motions for summary judgment with respect to defendant Ziebart International in a separate opinion if necessary.

In support of its motion for summary judgment, plaintiff has adduced evidence of infringement with respect to all asserted claim elements.  Defendants advanced three arguments in response to plaintiff's motion and in support of their own motion for summary judgment: (1) their wire-filament bearing tape is not "masking material" within the meaning of the '319 patent; (2) their fiber-filament bearing tape is not an "elongated masking material" as that term is used in the '469 and '900 patents; and (3) their fiber-filament bearing tape does not contain "an elongated filament adhered to said substrate," as that term is used in the '469 and '900 patents.  However, none of these arguments is supported by the claim language.  I conclude that defendants have waived any other arguments with respect to non-infringement by failing ro raise them in response to plaintiff's motion for summary judgment.  Accordingly, plaintiff's motion will be granted in full and defendants' motion for partial summary judgment will be denied.

From the parties' proposed findings of fact, I find the following facts to be

2

undisputed.

## UNDISPUTED FACTS

### A.  United States Patent No. 6,284,319

Plaintiff's United States Patent No. 6,284,319 (the '319 patent) is titled "Edge Trimming Tape and Method of Manufacture."  The patent contains 4 claims, all of which are method claims.  The claimed methods relate to applying a masking material containing a filament located between two surfaces, applying a coating on top of the masking material, allowing the coating to cure (fully or partially), and then pulling the filament through the coating to cut it.

Claim 1 is independent; claims 2-4 depend from claim 1.

The patent discloses:

1.  A method of trimming a coating applied to a surface comprising:

> (a) applying to the surface to be coated a masking material comprising a first surface and a second surface between which is disposed a filament of material of sufficient tensile strength to cut the coating material, wherein the masking material defines at least one edge of the area to be coated;

> (b) applying coating material to the surface

> (c) allowing the coating material to dry or cure until it obtains sufficient strength to hold a cut edge; and

3

(d) drawing the filament through the masking material and through the coating to cut the coating.

2.   The method according to claim 1, wherein the surface comprises an automobile body surface.

3.  The method according to claim 1, wherein the coating material comprises polyurethane.

4.  The method according to claim 3, wherein the filament comprises a metal wire adapted to cutting through polyurethane.

### B.  United States Patent No. 6,875,469

Plaintiff's United States Patent No. 6,875,469 (the '469 patent) is titled  "Edge Trimming Tape and Method of Manufacture."  It relates generally to methods of using a filament-bearing masking tape to trim the edges of protective liners applied to vehicle surfaces such as truck beds.  Claim 1 is the only independent claim included in the patent. The dependent claims disclose specific applications of the claimed method.

Claim 1 discloses:

1.  A method of coating a vehicle surface with a coating material comprising:

a.  applying to said vehicle surface an elongated filament bearing masking tape comprising:

i. an elongated substrate having at least one adhesive surface which is removably adhered to said vehicle surface,

ii. an elongated filament releasably adhered to

4

said substrate adjacent to an elongated edge of
said substrate, which edge corresponds with and
defines at least one edge of said vehicle surface to
be coated, and

iii. an elongated masking material adhered to said
substrate on a surface opposite said surface of
said substrate which is removably adhered to said
vehicle surface;

b. applying said coating material to said vehicle surface and over
said elongated edge of said substrate;

c. allowing said coating material to at least partially dry or cure;
and

d. drawing said filament through said coating material to cut the
coating material, wherein said filament has sufficient tensile
strength to cut said partially dried or cured coating material.


### C.  United States Patent No. 7,014,900

Plaintiff's United States Patent No. 7,014,900 (the '900 patent) is also titled  "Edge

Trimming Tape and Method of Manufacture."  The claims of this patent relate generally to

coated vehicle surfaces that include filament-bearing masking tape and, in some cases,

additional masking material as well.  They disclose an intermediate product that is formed

when an elongated filament-bearing masking tape has been applied, the vehicle surface has

been coated, but the coating has not yet been trimmed by pulling the filament.

Of the asserted claims, claims 1, 8 and 9 are independent.  The dependent claims

relate to specific kinds of coated vehicle surfaces.

Claim 1 discloses:

1.  A coated vehicle surface comprising:

a. the vehicle surface;

b. an elongated filament bearing masking tape comprising

      i. an elongated substrate having at least one adhesive surface
      which is removably adhered to said vehicle surface,

      ii. an elongated filament releasably adhered to said substrate
      adjacent to an elongated edge of said substrate which edge
      defines at least one edge of said coated vehicle surface, and

      iii. an elongated masking material adhered to said substrate on
      a surface opposite said surface of said substrate which is
      removably adhered to said vehicle surface;

c. a coating applied to said vehicle surface and extending over at least a
portion of said filament of said masking tape, said coating having been at least
partially dried or cured, wherein said filament has sufficient tensile strength
to cut through the at least partially dried or cured coating material.

Claim 8 discloses:

8.  A coated vehicle surface comprising:

a. the vehicle surface;

b. an elongated filament bearing masking tape comprising:

      i. an elongated substrate having at least one adhesive surface
      which is removably adhered to said vehicle surface,

6

ii. an elongated filament releasably adhered to said substrate adjacent to an elongated edge of said substrate which edge defines at least one edge of said coated vehicle surface, and

iii. an elongated masking material adhered to said substrate on a surface opposite said surface of said substrate which is removably adhered to said vehicle surface;

c. a second masking material applied to said elongated masking material of the tape, and extending beyond said elongated filament bearing masking tape; and

d. a coating applied to said vehicle surface and extending over at least a portion of said filament of said masking tape, said coating having been at least partially dried or cured, wherein said filament has sufficient tensile strength to cut through the at least partially dried or cured coating material.

Claim 9 discloses:

9.  A coated vehicle surface comprising:

a. the vehicle surface;

b. an elongated filament bearing masking tape comprising:

i. an elongated substrate having at least one adhesive surface which is removably adhered to said vehicle surface,

ii. an elongated filament releasably adhered to said substrate adjacent to an elongated edge of said substrate which edge defines at least one edge of said coated vehicle surface, and

iii. an elongated masking material adhered to said substrate on a surface opposite said surface of said substrate which is removably adhered to said vehicle surface;

c. a second masking material applied to said elongated masking material of the tape, and extending beyond said elongated filament bearing masking tape and

7

secured to said elongated filament bearing masking tape by an adhesive; and

d. a coating applied to said vehicle surface and extending over at least a portion of said filament of said masking tape, said coating having been at least partially dried or cured, wherein said filament has sufficient tensile strength to cut through the at least partially dried or cured coating material.


### D.  Defendants' Products

Defendant Rhino sells materials that are used in the application of sprayed-on truck bed liners.  Typically, these liners are applied to the beds of trucks by spraying the lining material onto the truck bed.  Rhino sells materials to approximately 1500 dealers worldwide.  It gives these dealers permission to use the Rhino brand and sell its products.  Defendants Ballweg Chevrolet, Inc. and King Kollision, L.L.C. are Rhino-authorized dealers.

The materials sold by Rhino include spray equipment, chemicals and filament-bearing tapes that are used to trim sprayed-on truck bed liners.  Rhino has sold two types of filament-bearing tape since September 2001: wire tape and fiber tape.  In 2005, Rhino began manufacturing its own wire tape; before that, it purchased tape from a company called Trim Tape.  The wire tape that Rhino manufactures includes a .009 inch diameter wire filament "sandwiched" between two pieces of translucent, double-sided tape.  The wire is adhered to the tape approximately .02 inches from one edge and is surrounded by adhesive material to a large degree.  The overall width of the tape is .25 inches.  A removable, non-adhesive

"release liner"covers the adhesive top layer of tape.  The wire tape that Rhino purchased previously from Trim Tape was configured in the same way as the tape Rhino now manufactures.

The fiber tape that Rhino manufactures is made up of a single piece of lime-green masking tape with fiber filament adhered to it.  Only one side of the tape is adhesive.  The fiber filament is attached to this adhesive bottom layer.  The fiber filament is not itself coated in adhesive.

Before Rhino distributes materials to its dealers, it requires them to receive training from its employees at its facilities and also on-site training at the dealer's facilities.  This training includes instructions for using Rhino's filament-bearing tape to trim a Rhino sprayed-on truck bed liner.  In at least some instances, Rhino employees demonstrate the use of the tape in a "real world application."  They show how to apply the filament-bearing tape along the edge of the surface to which the liner will be applied, how to spray on the coating material and how to pull the filament through the coating.

In addition to this training, Rhino distributes to its dealers a technical reference, a training video and a quality standards poster.  Defendant intends for the dealers to follow the procedures outlined in the technical reference, training video and quality standards poster.  All of these materials describe the use of defendant's filament-bearing tape to trim sprayed-on truck-bed liners.  According to at least one of the processes described in the

9

reference manual, a three-quarter inch wide line of ordinary masking tape is adhered to the vehicle surface edge along which the truck bed liner will be sprayed. Additional masking paper may then be applied to surfaces not intended to be covered with the coating. The filament-bearing tape is then applied along the edge of the masking tape, the tape adheres to the masking tape with an adhesive. The filament-bearing tape is positioned as closely as possible to the edge of the masking tape and the edge of the surface to be coated. After the filament-bearing tape has been applied, the coating material is applied to the truck bed and on top of the filament-bearing tape. The coating materials begin to set within a few seconds of being sprayed onto the truck bed surface. After the coating has been allowed to dry or cure at least partially, the filament of the wire tape is pulled up through the coating to cut it. This creates a neat, clean edge to the liner. After this is done, the additional masking material is removed.

This process is described in the Rhino Technical Reference Manual directions for using an over-the-rail application in the following way: (1) clean the bed; (2) apply a 3/4" masking tape to create the desired edge, (3) sand the bed; (4) clean the bed; (5) place the wire or fiber tape along the edge of the 3/4-inch masking tape; (6) finish applying masking paper; (7) spray the truck; and (8) trim the coating by pulling the wire or fiber through the coating.

According to another application method taught by Rhino's training video, the wire

10

tape is applied directly to the vehicle surface and the adhesive layer on top of the tape is used to attach additional masking material. The wire tape is applied to the vehicle surface with the filament-bearing edge bordering on the area to be coated. The release liner on top of the tape is removed to expose the underlying adhesive. Masking paper may be adhered to this exposed adhesive. The masking paper is substantially wider than the tape and extends beyond it. Coating material is applied and allowed to cure, at least partially, and the filament is then pulled through to create a neat, clean edge.

At least a few extra inches of filament-bearing tape are left at the end of the edges of the area where the truck bed liner will be sprayed. This is to provide a "leader" that can be used to start pulling the filament after the coating has been applied on top. The coating materials used to make a Rhino sprayed-on truck bed liner are polyurethane. The materials are designed to protect the truck bed from corrosion, moisture and abrasion.

In addition to selling the tape to customers and instructing them on its use, Rhino employees have used its tape to trim sprayed-on truck bed liners at the San Diego facility on multiple occasions.

OPINION

A.  The '319 Patent

As noted above, only plaintiff has moved for summary judgment with respect to the

11

'319 patent.  It asserts that defendants use their wire and fiber filament-bearing tapes in a manner that infringes claims 1 through 4 of the '319 patent.  To that end, plaintiff explains in its brief its theory of infringement with respect to each claim element included in its patents and has proposed facts with respect to these elements.  Defendants do not identify any factual disputes that would preclude summary judgment, but assert generally that plaintiff has failed to adduce evidence of infringement with respect to every element of the '319 patent.  Of course, this is a legitimate inquiry.  To prevail on a claim of direct infringement, plaintiff must show that every element of the claimed portion to the patent is met by defendants' use of the accused products.  Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1330 (Fed. Cir. 2001).

However, defendants identify specifically only one element of the '319 patent about which they contend plaintiff has no evidence of infringement, this is the "masking material" element discussed below.  Defendants argue that their wire-tape cannot infringe because it is not a "masking material" as that term has been construed.  They do not argue that there is no evidence of infringement or identify specifically any other claim elements that are not met by their use of their wire-tape.  Perhaps they have other arguments, but a party opposing a motion for summary judgment may not simply tell the court that other reasons for denying the motion are lurking somewhere in the record.  See, e.g., Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005).  Therefore, I conclude that defendants have

waived all other arguments because they failed to address plaintiff's arguments and evidence on these points.

In their claim construction materials, the parties agreed that "masking material" means "material that protects an area of a surface that is not intended to be covered with a coating."    Thus, the only question presented is whether defendants' wire tape constitutes a "material that protects an area of a surface that is not intended to be covered with a coating."  It is undisputed that defendants' wire tape is made up of two layers of translucent double-sided tape with a thin wire filament between the two layers.  It is further undisputed that one way of using defendants' wire tape is to apply it directly to a vehicle surface and add additional masking material as necessary to protect the vehicle surface from being covered with the sprayed-on coating.

Defendants offer two arguments about why their wire tape does not constitute a masking material within the meaning of the '319 patent.  First, because only the bottom layer of the tape is adhered to the vehicle surface, the top layer does not "protect an area of a surface."  Therefore, they contend that the top layer is not a "masking material."  Just because defendants' tape includes two layers of adhesive material does not make the top layer any less valuable in protecting the underlying vehicle surface (even if it protects the same area as the lower layer).  In fact, the claim language itself describes a "first surface" and "second surface" of masking material.

13

In addition, defendants' argument is contradicted by one of the preferred embodiments included in the patent.  Figure 1F shows a folded-tape construction in which a filament is surrounded by two layers of a masking material (the "first" and "second" surfaces).  *All* of the material around the filament must be "masking material" to fall within the scope of the claims.  If defendants were correct, only the lower surface of the material would constitute masking material.  This is incompatible with one of the often-cited canons of the Court of Appeals for the Federal Circuit, that claims are not to be interpreted "in a way that excludes the preferred embodiment from the scope of the invention."  See, e.g., Helmsderfer v. Bobrick Washroom Equipment, Inc., 527 F.3d 1379, 1383 (Fed. Cir. 2008) (internal citations omitted).

Second, defendants assert that plaintiff cannot show that tape covering the surface of a vehicle protects the vehicle surface from being covered with a sprayed-on coating.  This is silly.  Defendants' product is a non-porous tape.  Anyone who has ever painted a room knows that the point of putting down a layer of tape is to prevent certain areas from being coated with paint.  And that appears to be one of the very advantages of using defendants' products.  There is no serious debate that defendants' product does not protect "an area of a surface that is not intended to be covered with a coating."

As noted above, these are the only objections defendants raised to plaintiffs' motion for summary judgment.  I find that they have waived all other arguments regarding non-

14

infringement.  Therefore, because plaintiff has shown that defendants' filament-bearing wire tape is a "masking material" within the meaning of the '319 patent, its motion for summary judgment will be granted.

## B.  The '469 and '900 Patents

The parties have filed cross-motions for summary judgment with respect to the '469 and '900 patents.  Plaintiff has moved for summary judgment on the ground that use of defendants' wire tape according to the processes described in Rhino's training manuals infringes claims 1-8, 10-12, 18-20, 22, 26 and 30 of the '469 patent and claims 1-7 and 10-12 of the '900 patent.  In addition, plaintiff contends that use of defendants' fiber tape according to the processes described in Rhino's training materials infringes claims 1-8, 12 and 19-20 of the '469 patent and claims 1-7 and 11-12 of the '900 patent. Once again, defendants do not address most of plaintiff's arguments related to the elements of both patents.  Instead, they contend only that the use of their fiber filament-bearing tapes does not meet the claim elements of both patents that require "an elongated filament adhered to said substrate" and "an elongated masking material."  As discussed above, defendants have waived all other arguments by not raising them in response to plaintiff's motion.

## 1.  "an elongated filament adhered to said substrate"

15

Defendants argue that their fiber tape cannot meet the "an elongated filament adhered to said substrate" limitation of the '469 and '900 patents when that limitation is construed properly.  Therefore, the dispute boils down to a claim construction question.  Neither party asked for a construction of this term in their claim construction materials and plaintiff objects to any judicial construction beyond the ordinary meaning of the term as coming too late.  I agree with defendants that because the term is now subject to dispute, it is important to establish its scope.  See, e.g., O2 Micro International, Ltd. v. Beyond Innovation Technology Co., 521 F.3d 1351, 1361-63 (Fed. Cir. 2008) (district court should construe claims for which "the parties present a fundamental dispute regarding scope or meaning of the claim term").  However, as discussed below, this decision is ultimately of little help to defendants because I find that their proposed construction imposes limitations that are not supported by intrinsic or extrinsic evidence.

The element "an elongated filament adhered to said substrate" appears in all of the asserted claims of the '469 and '900 patents.  Defendants argue that it must mean "an elongated filament attached to said substrate through an adhesive between the elongated filament and said substrate."  Thus, the real dispute relates to the meaning of the term "adhered to."  Plaintiff takes the position that the term takes its common meaning of "attached to" in the '469 and '900 patents and that the full claim term does not require adhesive between the filament and the substrate.

16

The rules for claim construction are well-known and need not be repeated here. The parties disagree first about the ordinary meaning of the term "adhered to." In common parlance, something that said to be "adhered to" a surface need not itself be covered in adhesive if it is surrounded by and attached to the surface by an adhesive material. (One may adhere a note to the front door with tape, even if the paper itself is not sticky.) Therefore, the ordinary meaning of the term is not limited in the manner defendants suggest.

However, defendants argue that, even if the ordinary meaning does not require adhesive between the fiber filament and the substrate, plaintiff disclaimed a method that did not require adhesive on the filament itself. A patentee may disclaim certain embodiments during prosecution, but such a disclaimer must be "clear and unmistakable" to have legal effect. E.g., Purdue Pharma L.P. v. Endo Pharmaceuticals, Inc., 438 F.3d 1123, 1136 (Fed. Cir. 2006).

According to defendants, disclaimer occurred when plaintiff distinguished prior art during prosecution by explaining that "In this embodiment of the invention as claimed, the tape with the filament is adhered to the vehicle surface, and an elongated masking material is adhered to the tape." This is hardly the kind of a "smoking gun" or clear or unmistakable disavowal of claim scope required to find disclaimer. Nothing in this statement indicates *how* the filament is disposed between the layers of the tape or specifies that there is adhesive between the fiber filament and the substrate.

17

It is undisputed that in at least some recommended uses of defendants' fiber filament-bearing tape the fiber is held in contact with the substrate by the upper layer of tape. The filament itself is not covered with adhesive on the side facing the substrate. Because I conclude that the claim language "an elongated filament adhered to said substrate" does not require the filament to have such adhesive, this use falls squarely within the scope of the asserted claims with respect to this claim element.

Finally, I note that defendants also attempt to muddy the water by describing several other "uses" of the tape that they contend do not infringe because in those uses the fiber filament is not in contact with the underlying substrate and instead is in direct contact with the vehicle surface (an application they assert is non-infringing). Because I have concluded that at least one of defendants' acknowledged uses of their fiber tape does infringe with respect to the " elongated filament adhered to said substrate" limitation, and it is not at all clear the purpose for which defendants submitted evidence of other uses, I will not consider whether these alternative uses may infringe as well.

2. "an elongated masking material"

Every claim of the '469 and '900 patents requires the use of "an elongated masking material" that is adhered to a substrate. In the claim construction opinion, I construed "elongated masking material" to mean "a material that is long in comparison to its width and

18

protects an area of a surface that is not intended to be coated."   To arrive at this construction, I adopted the parties' agreed-upon construction of the term "masking material" and the ordinary meaning of the term "elongated."   I rejected defendants' argument that the elongated masking material must protect a surface that "is not otherwise protected by the elongated substrate."

Defendants have not given up on their argument for adding this limitation, in spite of my statement.   They now urge that any application of their fiber filament-bearing tape in which the filament-bearing tape overlaps a base layer of masking tape cannot meet this claim limitation because the filament-bearing tape is not protecting the vehicle surface from being coated.   For the reasons discussed at length in the claim construction opinion and in the discussion of "masking material" above, I conclude that the '469 and '900 patents include no such limitation.   Defendants' tape constitutes an "elongated masking material" even when layered on top of a strip of masking tape.

It is undisputed that at least one of the ways defendants recommend using their fiber filament-bearing tape is to layer it on top of an underlying strip of masking tape (the "adhesive substrate" in the parlance of the '469 and '900 patents) and to add additional masking material as necessary.   The vehicle surface is then sprayed with a coating and the fiber filament is pulled through the coating to provide a clean edge.   This is precisely the method described in the asserted claims of the '469 and '900 patents; accordingly,

19

defendants' use of this method, and their direction to their customers to use their products in this way, constitutes infringement.

Because I have rejected the only arguments defendants have made in response to plaintiff's motion for summary judgment and in support of their own motion for summary judgment and because I have concluded that defendants have waived any other arguments they may have regarding non-infringement, plaintiff's motion for summary judgment will be granted in full.

ORDER

IT IS ORDERED that the motion for summary judgment filed by plaintiff Langeman Manufacturing, Ltd. is GRANTED with respect to plaintiff's claims that (1) defendants Rhino Linings, Inc. Ballweg Chevrolet, Inc. and King Kollision's use of wire-filament bearing tape infringes claims 1-4 of United States Patent No. 6,284,319, claims 1-8, 10-12, 18-20, 22, 26 and 30 of United States Patent No. 6,875,469 and claims 1-7 and 10-12 of United States Patent No. 7,014,900; and (2) defendants' use of fiber-filament bearing tape infringes claims 1-8, 12 and 19-20 of United States Patent No. 6,875,469 and claims 1-7 and 11-12 of United States Patent No. 7,014,900.  FURTHER, IT IS ORDERED that the motion for partial summary judgment of defendants Rhino Linings, Inc. Ballweg Chevrolet, Inc. and

King Kollision is DENIED in full.

Entered this 15th day of August, 2008.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge